Mr. Robinson, were you ready? I am, Your Honor. Thank you. May it please the Court, Edward Robinson on behalf of Appellant Mr. Elboghdady, present at counsel with me is my associate Brian Robinson. We were counsel at the trial. Your Honor, if I may, the district court judge at the jury instruction conference focused on the inducement element of the crime. And my friend on the other side stated that the Sue case, of which I know that you were a judge on that matter as well, set a higher standard of predisposition than other circuits. And we've suggested in our brief, I think pretty strongly, that Sue does acknowledge that inducement on the part of the government does include pleas to sympathy, pleas to friendships. We cite the Pullman case from the Ninth Circuit, but that's in reliance on Jacobson out of the Supreme Court. And so what we have in this case is a situation where the trial court, instead of focusing on the lack of predisposition at the time we had the jury instruction conference, focused almost exclusively on the inducement element of the defense. And as we stated in our briefs, the core purpose of the entrapment doctrine is focused on predisposition. It's to make sure as a matter of policy and justice that someone who is not predisposed in this case to have a sexual interest in children and pursue it in the way that the design was set up by the government isn't entrapped, isn't made a criminal based upon the design of the government. What we have cited in our brief, and I think is very important in this case, is what Judge Chambers said at the jury instruction conference where he denied our request for the entrapment instruction, but also at sentencing. And in order to frame that, I'd like to point out, if I may, that the trooper who was the fictitious mother in this sting operation testified that the ad that she posted in Craigslist, and this is at Joint Appendix 68, was somewhat vague, yet tried to narrow down the predisposed people. That type of person would have to read between the lines to understand what the advertisement meant. But counsel, again, from a, not outcome standpoint, but from a structural standpoint, I mean, inducement is one of the two elements. There's no question about that. And you have a burden of producing information, more than a scintilla of evidence about inducement. And there's kind of a, to me, a somewhat difficult question of whether you also have the burden of proving lack of predisposition or whether that's the government's burden. I know what it is if there's a charge, but I'm talking about in order to get the charge. But regardless, do you agree that you have to have scintilla of evidence of inducement to get the charge? Inducement, yes. Yes, I agree. That's the standard. That's the standard in the Sue case. We cite a case out of the Seventh Circuit, Pallado, which references Jacobson out of the Supreme Court. And what Pallado does, and this is where I think the court was incorrect in denying us the entrapment instruction, Pallado says that lack of predisposition informs the degree of inducement that is necessary to get the instruction. In other words, if someone has no predisposition, in this case, to have a sexual interest in children, none at all, then the subtle pressures that were applied to Mr. El-Baghdadi, particularly given his lack of skill in speaking English and his undeniable interest in the fictitious mother, plays on the possibility that Mr. El-Baghdadi could have a relationship with the mother, which is what he was expressly seeking. But over and over, I think it's fair to say the record supports he had that interest. And I think it may be fair to say that that is somewhat vague intentionally. But over and over, when he expresses interest in her, the officer posing as the mom, I mean, she cuts him off every time and says, no, no, no. I mean, is there anything in the record where she says or hints that maybe if you do this with the kids, we'll have something or something to that effect? I mean, it seems to me she disavows that at every turn. There is one piece in the evidence. It's at Joint Appendix 386. And this is at the end of the chronology. And if I may put it in perspective, the trooper testified and the judge, I think, concluded that the text messages between Mr. El-Baghdadi and the trooper are somewhat not meaningless, but they're not evidence of a preference on the part of Mr. El-Baghdadi to have sex with children. It's because he misunderstood what was going on. In the record, there's evidence that Mr. El-Baghdadi said, I'm not understanding what you are saying. What do those numbers mean? That's as Mr. El-Baghdadi, I believe he's in West Virginia at this point, what do the numbers mean? Those are the girls' ages. And then Mr. El-Baghdadi immediately says, I want to have a good time with you, you being the fictitious mother. That's it. But to answer your question, if I may, at Joint Appendix 386, there's a little colloquy between Mr. El-Baghdadi and the trooper posing as a fictitious mother. I like you laughing like that. I want to say that I want to play with you okay. And then there's some confusing discussion between the two where it's clear neither one of them are you. Are you expecting me or the girls? Because I'm not really into dudes, if you get what I'm saying. El-Baghdadi says, okay, okay. And then he says, what? Demonstrating that he doesn't speak English well enough to understand what she's referring to. I don't want that. Okay, what? I am normal. And then the trooper says, and I think this answers your question, Your Honor. Okay, you'll be fine, even if, conditional, even if I decide that I don't want to do anything with you. Now that keeps open the possibility that this fictitious mother, for whom Mr. El-Baghdadi has repeatedly expressed a sexual interest in, that it's a possibility. The record, I think, is pretty clear when you look at it that each time the trooper, the fictitious mother, asks Mr. El-Baghdadi, what do you want to do with the girls? He either expresses confusion or he doesn't answer. Really, the only answer that he gives to the trooper, and that's at or about this same time, is, I want them to wear sexy pants. And I'm quoting him. Mr. El-Baghdadi, as I read this record, never once describes what he wants to do. All of the descriptions of the prohibited sexual acts come from, excuse me, come from the trooper. And so this is what, so if, let me ask a question. If you, let's assume his preference is to have a relationship with the mom. If there's not an inducement, and I know you can test that and you point to the language you just said, but assume that in this record isn't enough. If there's not an inducement and he wants, and he hopes that sex with the kids will lead to a relationship with the mom, that doesn't represent an entrapment defense, does it? I mean, he has to have the inducement. If he says, look, I'd rather be with the mom, but I'm going to have sex with the kids, then in order to do that, if he's not induced, we don't have entrapment. Do you agree with that? Yes, I would agree with that. But I do want to highlight what Judge Chambers said, because I think that maybe on reflection, maybe the period of time between conviction and sentencing, things became clearer. But the judge says, there is not evidence here that Mr. El-Baghdadi was a predator, was on the prowl when he saw this advertisement, and decided here was his chance to go have sex with a couple of minors for the first time or again. I think this evolved in a different way. That statement points out clearly that prior to the contact with law enforcement, which is the relevant time period to determine a predisposition, the judge felt that there was no predisposition. That's one way to show predisposition, is having a prior state of mind or prior acts that you were trying to make this happen. Another way to look at it is your acceptance. You could have lack of predisposition in the sense that he wasn't planning to have, going out and planning to necessarily do anything with the kids, but the law talks about ready acceptance as well. I understand. If I may answer it this way, and I say this, I'm quoting from a which circuit it's out of, but you cannot become unentrapped. To answer your question, it's clear from the record and from Judge Chambers' statements at sentencing, he even says, I'm not sure that El-Baghdadi at this point in time understood that the advertisement was for sex with a minor or at any point in time. We have to look at whether or not there was a scintilla of evidence, a brief spark I think it comes from Webster's, the smallest bit of evidence, that it was the government who decided to persuade, induce Mr. El-Baghdadi into this crime that he otherwise, I would suggest, clearly is not disposed to commit. Think about what the trooper said, if I may. The trooper said that the reason she pursued Mr. El-Baghdadi and never once did any background check on him to see if there was any kind of record that he had been involved in I don't, it's in there, it's in our brief, the joint appendix. It helps her sleep better at night knowing that somebody is not out there preying on children when the trooper possibly could have done something about it. Mr. El-Baghdadi in some fashion was allowed through the continued communication with the trooper, you may, if I decide not to have sex with you, that's something that may happen, but again conditionally that opportunity still exists. Her desire, and we're not claiming misconduct here, but the trooper's desire was to take a man who otherwise, left to his own devices, never would have been in this situation and continually when Mr. El-Baghdadi says, I want to have sex with the mother, with you, graphically described, says, but what about the children? But what about the children? And this is with a man who until he is driving to West Virginia doesn't even know what the numbers mean with respect to the ages of these fictitious children. And so to get back to the Polito case and our point, someone who is as un-predisposed, if you will, as Mr. El-Baghdadi, subtle forms of persuasion, his vulnerability, he is uniquely susceptible to this desire to have a relationship with a woman, the court notes that he's lonely, he's here from Egypt, his desire for adult companionship is clear. What the agent should have done is recognized that after doing any investigation that this man is not predisposed, he clearly wants to have sex with me, and he's not saying the things, I see my time is up, if I may finish this comment, he's not saying the things that lead me to believe that he is the type of person who, but for this sting operation, would be involved in the crime. And I'll reserve my time for a but if I may. Thank you, Mr. Robinson. Ms. Harrell. May it please the court. The United States would request that the court affirm the defendant's entrapment instruction as a matter of law. He is required to produce at least a scintilla of evidence that there was government inducement in this case. In this particular case, there was none, and the court correctly decided that. Because inducement, while the burden of production on the defendant is quite low, the standard for what constitutes inducement is quite high. It involves government solicitation plus some government overreach or improper conduct. This court has determined that an undercover posting a passive ad online barely rises to what would be determined to be solicitation. If the mere fact that an undercover officer has initiated something is enough to have entrapment, then every undercover case would be entrapment. The undercover posted something, and it was the defendant who voluntarily responded. And what were you soliciting? In the initial ad, as the officer indicated, she was, she makes it vague. It is talking about a mama bear who's looking for fun with her cubs. So she references that she has cubs. And as she testified, approximately 30 people that weekend responded to her ad, and only two traveled. So many people misunderstand that. And as soon as they find out what it's about, they walk away. She said they often called her terrible names and report her for the ad. When Mr. Al-Baghdadi was told what was happening, within 45 minutes of beginning those text messages, which began shortly after they had initially had communication over email, he persisted when the undercover officer suggested they might not be looking for the same thing. So the solicitation was she wanted to have sex? She wanted her children to have sex, and she enjoyed watching it, was her persona. And that is what she repeated. But the solicitation was, I want to have fun with my, right? Was the fun part of that sex? The fun part would have been the sex. For her to have sex too, right? It could be interpreted that way, Your Honor, the initial advertisement. Right, the initial ad. But the conversation, he clearly wanted to have sex with her. And he did make those comments, Your Honor. Several times. He was, I would just say, he was, he begged almost. He was begging. He did. And the United States would argue that he continued to beg despite repeated rejection, only after he had clearly established within 45 minutes that this was going to be sex with children, and he was going to bring condoms so that the 11 and 13-year-old did not become pregnant. When someone is looking to solely have sex. Do you agree that there was some confusion about the numbers? I would agree that he made that statement, Your Honor. But I think timing is critical. We're not talking about a defense. The defendant can always raise the defense to the jury. That the government has failed to meet its burden, that he had the intent because there was a language barrier, and he did not understand it. And the defense did make that statement. Entrapment is a different animal altogether. It requires improper government conduct. And per stipulation by the parties, the travel took place between 5 p.m. and 7 30 p.m. That first call where he first says, I don't speak English well. The first time she speaks with him in anything other than electronic communication took place at 6 p.m. He was already an hour into his travel. And entrapment requires improper government inducement to commit the crime. He was charged with attempt. At that point, he has completed an attempt defense. He has arranged this. It appears that he has established the intent by saying, I'm going to bring condoms. He's asked about the girls wearing sexy clothes. He's asked about what they're interested in sexually. He's agreed to this conversation where he's still expressing that his intentions are with her. Yes, your honor. So he could have traveled because he's coming to see her. That is true. And that is a question for the jury. And that was in front of the jury. But you didn't give the instruction for the jury to determine it in a different context. You only wanted a context that you wanted. But wouldn't it be fair for them to have a context? Was this man because of language barrier problems and clear subterfuge on the trooper in this subterfuge? But wait a minute, you know, I'm not sure they were back and forth. And as I think you said it well, they why isn't it a scintilla of evidence or at least to get the instruction? We're not saying that it would prevail. That's not the standard. But the question here with the language and as pretty clear even on the travel, what's this 11 and 13? What does that mean? Where those numbers mean? Isn't that an odd question to ask? If you know you're going to have sex with the 11 year, 13 year old, you're still asking, what do you mean when you said 11 and 13? What does that mean? Don't you? Don't you think that is evidence? Obviously not convincing to you, but you're not the jury. And the jury doesn't know that a thing exists called entrapment. And but that's why we say a scintilla is is only things necessary. And that is the whole conversation and his whole content. He is so overbearingly wanting to have sex with her and she is so clearly sort of words clearly vague. And then his evidence by him saying what about you think about that? I don't know what the 11 and 13 is. And you say what kind of did he say? I'm bringing condoms to have sex with girls. She said you have to bring condoms because I don't want the 11 and they're 11 and 13, but they can still get pregnant. And I don't want to be a grandmother. And then he said, okay, I'll bring condoms. Okay, but he but that doesn't mean that so he's gonna have sex with you bringing condoms because the whole thing, it seemed like to me, he said, maybe it's humorous on his part. But listen, when I get there, I'm gonna be able to convince you to have sex with you. And I'm interested in you. And that may be his intent. And that is his perspective. And that might go to predisposition. But in terms of inducement, it's misconduct, improper overreach by the government. She laid out explicitly what this was, he agreed. And she did not know anything about a language barrier until he was already traveling to meet this at every stage, especially and this is what Judge Chambers looked at closely. That conversation about I'm going to bring condoms, here's a picture of the children. I have they are going to they can become pregnant, we don't want them to become pregnant. This is not about me. All of that happened within the first 45 minutes of them talking. After that, he persisted. But the United the agent never pushed anything. She never said, if you don't have sex with the children, I won't have sex with you. She repeatedly said, I will not have sex with you. At one point, she did say, if you want me to be involved, it's going to cost you money. I'm a single mother, I won't get involved unless you pay me. And he said, Oh, no, I'm not paying. I'm okay with the girl. So she suggested prostitution. Yes, Your Honor. As part of undercover operations, it's often common to see where the outer boundaries of someone's criminal conduct might be. Counsel, can I I want to make sure I understand how you're describing the officer's conduct. I heard you say the face or the Craigslist or ad was vague. Are you saying that the officer's conduct after the initial ad was vague or unclear? No, Your Honor. The initial ad is vague for a couple of reasons. One, if she explicitly puts on Craigslist, I'm looking for someone to have sex with my 11 year old, that's going to be shut down immediately. But as soon as this is happening, within a very short period of time, she brings up her children. She brings up not wanting the children to be pregnant. She brings up condoms. At that point, she brings up that there's no anal sex involved with her children. At that point, nothing is vague. It is clear what is happening. It's clear what the discussion is The fact that he later was looking for a cherry on top to have sex with the mother as well is not any kind of improper government conduct. He had agreed to this. When he's already got the children arranged, why not see if he can have sex with the mother as well? But that does not amount to government misconduct. My reading of the record is that he made it very clear from the beginning that he was interested in the mother. It wasn't after he arranged to have sex with the children. It was in the very beginning. He made it very clear that he was interested in her. She continued the conversation regarding the children. Then she keeps going. He'll say, I'm interested in you. Then he goes back and she'll say, but no, the children. Then he comes up again and he says, no, but I'm interested, but what about you? Then I think she comes back and says, well, I'm not into men. Then he goes back again and he says, but I'm interested in you. Even almost down to the last couple of, if you look at what is this, JA 395, she asked him and he says, no. I mean, she's still, when they meet in person, he's still saying, I'm interested in you. What about you? Yes, Your Honor, I would agree. I think that when we're looking at improper government conduct, if she had said, okay, maybe I'm on the table. Maybe this can be something we can arrange. That might've been inducing. Well, what about Appellant's argument earlier that she said, if I decide, I think, and it's not the exact language, but because you heard his argument earlier. What about that argument? That was during a phone call that took place when he was about a half an hour away from the location. He was already about an hour and a half into his drive. I think when the undercover officer said, I need to sleep at night, when he says that, and that conversation is taking place, he's already, again, he's already committed the crime. The crime is an attempt. He has committed that crime. He's had the intent, at least the jury found he's had the intent, and he's engaged in a substantial step. Driving an officer at that point in time to say, you know what? Turn around. You shouldn't come. To call off someone who has already driven an hour and a half to have sex with the child. Even if he wants to have sex with her, there's no indication that she ever encouraged that. She shut him down every single time. Someone doesn't get to say the government has induced them when the government has repeatedly said, the thing you say you want, in addition to the sex with children we've already arranged, is not going to happen. It'll happen only if you pay. And he says, I'm not paying. And so the fact that he is still pursuing that does not create government misconduct. And that is the key between an entrapment instruction and getting to argue that he didn't have the intent. The defense argued to the jury extensively, he wanted to have sex with the mother. He clearly didn't want to have sex with the children. That is an absolutely permissible defense that he made to the jury. But entrapment is different. It requires that government inducement, which is a very high standard to show that the government engaged in improper conduct. Yeah, but you're mixing things. You're saying the standard to prove it is not the same standard to have an instruction on it. The standard to what constitutes inducement to meet that scintilla of evidence is quite high. You have to show it's more than mere persuasion. It's more than mild forms of persuasion. You have to show that it was improper conduct. So the standard of what constitutes inducement to get that instruction is quite high. Well, the improper conduct, maybe in this case, first of all, you weren't on a site where people try to find minors to exploit them, right? You're on a legitimate site, as you said yourself, that would have removed something like that if it had that nature off the completed. So that's one thing. So you're not looking at someone who's predisposed to be on a site, a dark site, like we know from many cases that therefore you got to somebody already that's predisposed to that genre. This is not the case. You have a language barrier. You have the officer repeatedly saying over and over and over, no, you can't have me. No, but that's what I want. No, you can't have me. I got some cubs here. And then back and forth, he said, no, I want you and you and that. And then say 11 and 13. And obviously, you don't want to make it clear. I don't know why in these cases, don't you just say the person is 13 years old and one is 11, and that's who you'll have sex with if you come here. You might make it vague. Then the person who comes in is clear, but here's status. Well, I don't know, they're bears, they're cubs, and this and all that. I like to watch and all. I mean, so when you put that together, why does that not together represent enough of a scintilla for the jury to decide under the framework of law? Because the instruction will tell you it's not just you, they get to consider it, but their guidelines within that instruction is how they are to consider entrapment. You agree? Yes, Your Honor. Right. So why wouldn't this be the kind of case where you would have that scintilla? I think one of the issues is the reason this has to be vague, and this is actually part of undercover training generally, is that you want the defendant to essentially lead that conversation. So you don't get as explicit. But she did get explicit enough to the point of in the same message where she said they're 11 and 13, they can get pregnant. She says, no anal, I have these hard rules about my children, no rough play. That is extremely explicit. Did he say, okay, okay, I won't be rough, I won't do those things? I believe his immediate response was about he joked that he usually doesn't buy condoms, but he'll bring them then. So immediately after she says that children can get pregnant, they're 11 and 13, they can still get pregnant, and I don't want to be a grandmother. Then he says, okay, I'll bring condoms. It can't get much more explicit than that. She'd already sent a picture of what and he asked for pictures, right? Yes. In fact, he specifically asked for a picture of the girl virgin at one point, which again, if you are just looking to have sex with a mother, I don't know anyone who in trying to have sex with an adult woman wants to make sure that her 11-year-old is a virgin. Well, yeah, I think Judge Benjamin's question and Judge Gregory's are fair. I mean, he wants to have sex with the mom throughout. The question, though, is even if that's what he wants, he's also is whether there's any evidence that the government did induce him. And it seems to me, just like was just discussed, he brings up the mom, she says no. He brings up the mom, she says no. He brings up the mom, she says no. So what the record looks like to me is he wants that, but she's clear that that's not in the cards and he keeps going, maybe hopefully expecting she might change her mind. That may be true, but that's not inducement because the government isn't offering anything to induce him. That's what it seems like the record is crystal clear on to me. I agree, Your Honor. There is no inducement in this case. All those issues may or may not go to predisposition, but they don't go to the inducement part of entrapment. And one of the reasons that the undercover officer repeatedly returns to sex with children is not to try to convince him, but to, again, make sure it is clear to this person that this is sex with the children, not with me, so that you do not accidentally get someone who's confused. Go ahead, Judge. So when he says no to her question, last couple lines, JA 395, he says no, I'm scared. When she continues on after that, is that not inducement? At that point, they were about 10 feet from being arrested. But is that not inducement? He says no. Right before she says we're going to go see the girls, he says no, I'm scared. And at that point, they were talking about sexual intercourse with the 11-year-old specifically. But the agreement was to engage in sexual activity, not necessarily intercourse with the virgin, but other sexual activity, and including with the 13-year-old as well. So at that point, they've established all of that. And he had said there was some discussion about maybe he will try with the 11-year-old, maybe he won't. They were going to see how she felt. And he might be scared to take an 11-year-old's virginity. But she asked a question, and he said no, I'm scared. And then she keeps pushing, and he says, I'll try. And I'm just trying to figure out when do we get to the overreaching? I mean, at what point is it overreaching? Is she allowed just to continue, to continue, and continue until? I mean, when is it overreaching? Well, I think when they're looking at inducement, it is, was there inducement prior to the defendant agreeing to commit the crime? And so the idea that suddenly he has had these conversations, he has traveled two and a half hours, he has met with her for a half hour, they are walking to meet the children, and then he's suddenly entrapped after committing essentially every act other than actually having sex with the children, which was never going to happen. To have it suddenly convert to entrapment at that point, and inducement at that point, would make entrapment an unavoidable item almost. Well, one last question. But I think Judge Gregory said this, but there's scintilla of evidence. This isn't saying that it's entrapment. I think the question here is, the judge, was there enough evidence? And the judge should have given a jury charge to the jury regarding entrapment. And so that's my question is, I don't know. I mean, this goes on for a while. At what point does it become when he says no? Because we pointed out, she said no, she said no, but then he finally says no. And so when is it overreach? I see that I'm out of time. May I respond? It becomes overreach when it is misconduct that would override someone who is otherwise innocent. And at this stage, especially when he first says no, I would argue that he wasn't saying no to sex with the children entirely, but again, just that act of sexual intercourse with the 11-year-old who was a virgin. But simply responding to that when someone is already walking with you does not amount to inducement that is causing an otherwise innocent person to commit a crime. And because of that, the United States does not believe there is even a scintilla of evidence of inducement. He almost immediately agreed. It did not require any persuasion at that point. And a comment he makes moments before being arrested does not change the government's conduct into improper overreach, Your Honor. So I would have thought your answer on the no was a little different. I would have thought your answer about no may reflect some question of intent of his part of the crime. But even if he did, the question is, what did the officer do? And did the officer, once he said no, do something untoward, some sort of, well, okay, if you say no, I'll do this? And I didn't see anything in the record where, in response to no, the officer then overreached in the sense of promising something. And so it seems like there may or may not, that may be good evidence that he didn't have intent ultimately, but it's not evidence at all of any officer conduct. You said it much better than I did, Your Honor. That is exactly the issue. That goes to intent. The officer did not do anything improper. She didn't tell him at that point, too bad, you're on your way, you have to do this. She did not do anything improper. And that may very well go to intent. And the jury could have easily been convinced that the government failed to meet its burden that he intended. Him saying no, that's really good evidence on closing to say he didn't intend that. And that argument was made. But the juror would understand no matter what you did, as long as eventually he did come to do that, he's guilty. They have no idea that there's a defense to even if eventually through all of those, that conduct, he says yes. They wouldn't know that. I mean, you could badger him for five or six days and they said, well, I don't know. Eventually he said yes, so he's guilty. But we might say, you see what I'm saying? That's, it's sort of, it's, I don't want to say it's nothing improper about the argument, but it misses the point. The point is about the trial. That's why you have a right to a jury. I mean, the judge may have thought that, you think that, this court may think that, but the trial fact was the jury. And the jury has to understand that even if eventually the person says yes, there's something that happens in badgering. It's like confession, you know, in the sense that, well, the police officer didn't do anything improper. Well, yeah, but you kept him there for 24 hours and didn't give him any food. You kept asking the same thing. Did you do it? Did you do it? And eventually you would say, oh, I did it. Then we could say, well, it doesn't matter what you did here. He eventually said yes. But along the way, you could probably count the number of times. You probably have a hard time he said, no, no, no, no. I want you. I want you. I want you. So are you saying as a matter of law, it can never be inducement solely by just continuing to encourage someone to commit the crime? That can never amount to it. It has to be something else like, well, if you don't do it, you know, I'm going to do this to you, or blah, blah, blah. I'm going to make you do something. Is that your position that it never can be just repeatedly? Yes. Yeah. Do it. No, I don't want it. Yeah. No, no, no, no, no. And you go on and on and on, but that never can amount to it and to get an instruction. Is that what your position is? Not at all, your honor. Okay, good. So good. So, so it's a matter then of degrees. Yes, your honor. And I, you said, you know, for example, if this had gone on for five or six days and he had, well, that was conversation at some point, it could be so repetitive, the request that is inducement. If the person has never agreed in this case, when he said, I will bring condoms so that I do not get the children pregnant. He said that he, I think the question was, did he say I will bring condoms because I won't get the children pregnant? Is that the record? No, your honor. He didn't say those words. She said, bring condoms so that the 11 year old and 13 year old do not get pregnant. I don't want to be a grandmother. He said, okay, I'll bring condoms. So it was sort of a leading specific questions are going to be for her. He hopes from that statement. I don't think that can be inferred that when she says, I don't want the 11 and 13 year old to get pregnant, bring protection. And he says, yes, I'll bring condoms. There was no prefacing in that particular statement, a discussion with the mother. So I don't believe the record can reflect and a jury could conclude that when he responds to a specific question about sex with an 11 year old that he'll bring condoms, that when he said that he was actually referring to something that was not the question. But after that, didn't he still say, I want to have sex with you. He did your honor. And she shut him down every time to make it clear this meeting was about sex with the children, just as he agreed 45 minutes into their conversation. All right. This is a little unusual, but I'd like to be fair to both sides because I want to ask questions about the sentencing and the council didn't get to that at all. And you didn't either, but I think it's a little unfair to you to ask him and then you don't get a chance to respond. So I'm going to give you a chance to respond because I'm sure he will too, because I'm going to ask questions about that. And my colleagues as well, about the sentencing issues, the enhancements. Yes, your honor. Well, isn't there a problem with one of the, the enhancement in a sense about minors, the enhancement that under 12 years old, when you only have one count, the evidence did not clearly say that, establish that this was for which child it was, the 11 year old or the 13 year old for that enhancement. Uh, that is, that's a problem. Well, it's, uh, for sentencing purposes, it is a preponderance standard and the judge may have found and did make a comment that it wasn't necessarily entirely clear, but he, he said it wasn't entirely clear. That is correct, your honor. It was not clear. But he found it clear enough by a preponderance to impose that. But his words, his words and what the evidence was, it speaks differently. He said, no, there's a problem here. And it didn't make it. The record is clear. It didn't make it clear. It was only one count. And when they referred to it to get the enhancement, it had to be definitely conviction was for the 11 year old and we don't know. And there was no specific verdict given to the jury to the said, you could have done that if you wanted to, to make it clear. But then for that, and for that, you have to show that that's a problem. Well, and there isn't a special verdict form because there isn't a statutory change between the sentence. It is. So you don't need a reason, but you don't really, but I mean, you didn't, but I guess, did you ask for this enhancement? I believe that probation simply recommended up and that's because the United States believes strongly that a preponderance of the evidence would demonstrate he went to engage in sexual activity with the 11 year old. And he that specifically that he traveled here. So his, the question is travel. He had traveled here before traveling had nothing to do with which, which child it was, but it does have to do with what the crime is for the enhancement. The enhancement is when he traveled, did he have the intent to engage in sexual activity with a child under 12? That's when this was an expression about the child 11 being out of the picture for him. Wasn't that, that was once he had already crossed the state line. So he had, there's no evidence in the record that he, when he traveled here had any hesitation. And again, that was solely referring to hesitation about having sexual intercourse. There was discussion that she was a Virgin and he specifically asked, can I see another picture of the girl Virgin? Um, that's not something that someone asks if they're not interested in sexual activity because it would be illogical to just randomly want to know which one was the Virgin. Yes, it could be. He'll make sure that that's the one you're talking about. I'm gonna make sure I don't have sex with that person. See if you want me, you want to put it all on this. I understand you cause you're the prosecutor, but that's what the balance is when you're talking about a jury and talking about that. The enhancement clearly it's doesn't delineate whether it's the 11 year or 12 year old. And that's a, that's a, that's a problem with the sentencing. And I believe it's a, the court clearly found by a preponderance. And then when talking about a downward variance, which he imposed a substantial downward variance, that's when you can't cure it. The question is whether or not the enhancement should have been given, not whether or not there was a downward. And what about the other one about the use of the computer, about a phone using a phone? And the judge said he didn't think that that would apply, but he gave the enhancement. I, um, did he not? I don't know that he, uh, questioned that. That particular judge has implied that, applied that enhancement every case I've done in front of him, because under the definition of computer, a cell phone qualifies. Um, there's never been a question of the cell phone would not qualify for the use of computer enhancement. Now that judge also in essentially every case varies downward to negate that enhancement because he doesn't agree with the enhancement, but he agrees that under the law, it applies. He simply varies downward to eliminate it from being considered. Okay. Thank you. I'll give you a chance to respond because you otherwise wouldn't be able to get up. Thank you so much. Thank you, Your Honor. Mr. Robinson. Thank you, Your Honors. And if I may, just to get to the point, my colleague on the other side speaks of, uh, speaks of government misconduct in the, in the case of El-Baghdadi, which I think we all know, it's misconduct or, disjunctive, overreaching. That's right. And we're not, this is, this is not a, uh, a misconduct case. It's an overreaching case. And, uh, Judge Benjamin, when you focus on the record where at the end Mr. El-Baghdadi says, no, it has to be put in context. And, and, and just before that statement by Mr. El-Baghdadi, again, the trooper said, you'll be fine even if I decide, even if I decide that I don't want to do anything with you. And so the question becomes, shouldn't the jury have been able to hear the repeated times where the trooper always redirected the conversation back to the girls? And, and just a point of record, the, uh, agent testified on cross-examination that after she spoke with Mr. El-Baghdadi, she realized his English was so bad, and the tapes are an evidence that part of the record here, that she realized that there could be misunderstanding about what they were talking about, and Judge Chambers made that very same observation. And so we have a man who is not predisposed, you don't have to be innocent, you have to be predisposed to have sex with children. That's, that's the relevant predisposition, and there is no evidence to that effect. He never once, uh, expressly said, I want to do this prohibited sex act with the and Mr. El-Baghdadi without hesitation said, I only want to be with you and that's it. And to the extent there was discussion about graphic sexual, uh, conduct, it was Mr. El-Baghdadi telling the fictitious mother what he wants to do with her, and after he says that, the trooper does say to assuage him, if you will, to further draw him into overreach, to draw him into this crime that, but for this ad, he never would have been, uh, never would have been part of, if I decide. You still have a chance, if I decide. Counsel, that's, I mean, I mean, I, I hear you, that, that they were maybe drawn in by the ad and, and, and, you know, 10 minutes, 10 seconds before they're arrested, but I mean, for, for him to say, no, I only want you, that, he didn't say that. I mean, he said, I want you over and over. I grant you that. I think there's strong evidence that he was hoping this would all lead to, to the mom, but he never said no to the kids until, you know, maybe the, the statement at the end, I don't know, I'm just having a hard time for you portraying an overreach when the mom, when the officer is saying, when he indicates an interest in her, no, this is about the kids, and if that's not what you want, do something else. And he, she says that at least once. And if I may, that is the decision for the jury, because if I may, that, that the scintilla of designed to get people who are predisposed to have sex with children to respond, which it is agreed, and Judge Chambers makes the finding that that's not who El Baghdadi was, but the jury has to decide. But that would change our law. We already have the Osborne case, which says the ad, you know, the ad can't be that scintilla. And I'm not arguing that. The overreach has to be in the post solicitation conduct. And I guess you could say it's overreach every time the, you know, the, the, your client ask about the mom for her to say no, that seems like not overreach, that seems like she's making it clear that's not part of this deal. And you either, and you can walk away and she says that I just, it seems like his continued pursuit of her and her disavowing of that, I just have a hard time saying why that's overreach. It seems like it's, if anything, making it clear what this is all about. The Pulido case deals with the ability to walk away. And the Pulido case is the case that relying on Jacobson says that the level of inducement, the level of overreach has to be considered in conjunction with the degree of predisposition. There is no predisposition here. And so what the, in order to make sure that we are not creating crimes for otherwise innocent, innocent people, the trooper, not because she wants to sleep well at night, and I'm not being disparaging when I say that, but the trooper should have ended this when it became abundantly clear that Mr. El-Baghdadi never once described what type of sexual act he wanted to, to have with the girls, based upon this gross misunderstanding. And he says no. At some point in time it's on the, it's the obligation of the government to say, it's, this gentleman is not predisposed to have sex with children. That's the, that's the, that's the inquiry. And the jury, not the judge, the jury should have decided that. And so when the government argues that, well, Mr. El-Baghdadi had an opportunity to argue what his intent was, the instruction says, a dominant purpose. And that's, I understand your argument, but for that argument, it seems to me to work structurally. A, the government has to have the burden of production on predisposition. And number one, which is undecided, I think, not burden of proof, I'm talking about burden of production for the instruction. And the inducement part of the test, you're talking about an out-of-circuit case that seems to conflate those two, but I think our law's pretty clear. Inducement, you gotta prove, you gotta produce a scintilla on inducement. And I, and I'm not arguing otherwise, and if it sounds that way, I, I, I, I'm not doing that. I, I will say that once there's that scintilla, and if the jury, it's a jury question, if the jury finds it, I think if there's a scintilla on, on, on, on inducement, you get the charge. And that's what we're fighting about. And then the which I, they can't, that El-Baghdadi is predisposed. And that's why, you know, to, to, to separate the two elements without recognizing the interplay, I suggest creates an unfairness to Mr. El-Baghdadi. And I see that I'm out of time, but I know that you have questions for me about the sentencing. I'm sorry, excuse me. I have a, obviously the, the nature of the charge and the government brought it up earlier that he traveled, that by the time he's saying no, he's already engaged, he's already engaged or in travel, traveling to engage in illicit sexual conduct, which is the charge. She's saying he's already, he's already in the car, he's already in motion. The crime is, has based on, has been committed. I would, I wanted to hear what you had to say about it. The framework is that Matthew says that, that to raise an entrapment defense, the defendant does not need to admit the crime or deny the crime. Having said that, think about if, if what the record shows, the record shows that in this conversation, the text conversation, bring condoms. And by the way, it was from the trooper, bring gifts for the children. What does Mr. El-Baghdadi not bring? He doesn't bring any gifts for the children. And the trooper admits that, you know, there was misunderstanding. Judge Chambers says it's not clear based upon the significant language barrier that Mr. El-Baghdadi suffered, that he even knew that this was about having sex with children. Again, there's reference to girls, but there's no reference to children. And it's not until after he's traveling that Mr. El-Baghdadi says, by the way, what do these numbers mean? And so it's clear that he believes he has a shot with the trooper, not to be crass, but that's what he believes. And he describes it in detail. And the trooper should have at that point in time, at least maybe run his rap or done minimal investigation to see whether or not this, this person has any history whatsoever demonstrating that, not that he's innocent, but that he has a sexual interest in children and there was none. Anyway, I hope that answers your questions. If there are any more questions with respect to the entrapment, I'm prepared to answer, but with respect to the sentencing. Yeah. What's your response to these two enhancements? Judge Chambers did vary, but now I guess we're talking about procedural unreasonableness. That's what we do. Procedural comes first. It comes first. Before substantive. It's procedural. You got to get that right. But if you concede that it's okay, that's fine. I'm just asking you, what do you think? Well, I don't, but I didn't raise it in my brief, so I appreciate the opportunity to address it. It was an interesting sentencing. And we did, we did object in our memoranda, the application of the eight level upward adjustment based upon the cross reference. And then forgive me for not remembering as well as I should, we turned those guideline arguments into variance arguments. And so to be fair to the government, that's what happened. But with respect to that eight level upward adjustment, because of the child, even if it's a preponderance standard, I would suggest that the court erred because the judge at Joint Appendix 312, as I believe you pointed out, he said there's evidence, there's significant language barrier instances in the transcript, the text messages that would represent ambiguous statements. The defendant was also interested in the mother. It wasn't entirely clear or certain that the defendant intended to engage in sexual relations with the eleven-year-old. There's not enough evidence to support that upward adjustment, even under a preponderance standard. And so at your invitation, I would argue that procedural unreasonable took place. The judge said that himself. What about the . . . do you agree with the government that telephones are always computers and they're interchangeable and that? Sadly, I'll concede that because that's what the law is, although I do believe Judge Chambers did vary to account for that two level upward adjustment. So even though the judge said he agreed that it shouldn't apply, the judge erred in the statement you're saying? The judge erred with respect to the eight level upward adjustment based upon the cross reference, but with respect to the computer, I don't think it would be fair for me to argue that he erred because the law is clear on the two level upward adjustment. It's antiquated and it appears to be a form of double counting. It should be part of the base offense level, but that's an argument for another time, if I may. All right. Very well. Good. Thank you. Thank you, Your Honor. All right. All right. We'll come down, greet counsel, and proceed to our next case.
judges: Roger L. Gregory, A. Marvin Quattlebaum Jr., DeAndrea Gist Benjamin